EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Zoraida Aponte Burgos, etc.<br>    Demandantes-Peticionarios<br><br>       v.<br><br>Carlos Aponte Silva, etc.<br>    Demandados-Recurridos | Certiorari<br><br>2001 TSPR 66 |

Número del Caso: CC-1999-911

Fecha: 7/mayo/2001

Tribunal de Circuito de Apelaciones:
                    Circuito Regional VI

Juez Ponente:
                    Hon. Ismael Colón Birriel

Abogados de la Parte Peticionaria:
                    Lcdo. Víctor M. Rivera Torres
                    Lcdo. Luis H. Sánchez Caso

Abogado de la Parte Recurrida:
                    Lcdo. Luis B. Méndez Méndez

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zoraida Aponte Burgos,
Etc,

      Demandante-Peticionarios

          v.                      CC-1999-911        CERTIORARI

Carlos Aponte Silva, Etc.

      Demandado-Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 7 de mayo de 2001.

Tenemos ante nos la cuestión de si unos empleados públicos, **de nombramiento transitorio**, pueden ser cesanteados al expirar el término de su nombramiento, cuando la acción referida de la autoridad nominadora está motivada sólo por razones de discrimen político partidista.

I

En 1990, los peticionarios, 29 personas todas miembros del Partido Popular Democrático (P.P.D.), presentaron demandas de daños y perjuicios contra el Municipio de Aguas Buenas. Alegaron que el Municipio les había violado sus derechos al no renovarle en 1989 sus contratos como empleados transitorios por razones de discrimen político. Solicitaron reinstalación, paga atrasada, daños y honorarios de abogado. Dichas demandas fueron posteriormente consolidadas.

En la contestación a las demandas, el Municipio expuso que los empleados demandantes, por ostentar nombramientos transitorios, carecían de expectativa de continuidad en el empleo; y que no tenían un derecho de retención que les hiciese acreedores a la concesión de remedio alguno, una vez expirado el término de sus nombramientos.

Luego de celebrar la vista del caso en su fondo, el tribunal de instancia encontró probado, entre otras cosas, lo siguiente:

1. En 1988, Carlos Aponte Silva resultó electo Alcalde por el Partido Nuevo Progresista (P.N.P.) en el Municipio de Aguas Buenas, derrotando al entonces incumbente Gudelio Díaz Morales del P.P.D. En enero de 1989, Aponte Silva tomó posesión de su cargo.

2.   Anterior a la administración del nuevo Alcalde, los nombramientos en puestos transitorios se efectuaron, como norma general, mediante contratos anuales. El procedimiento que se seguía en el Municipio para renovar los contratos de los empleados transitorios hasta el 1989, consistía en que al vencerse los contratos el jefe de la dependencia municipal en la que trabajaba el empleado le notificaba que tenía que firmar un nuevo contrato. En ocasiones el empleado continuaba trabajando luego de expirado su contrato sin firmar uno nuevo, hasta que posteriormente firmaba el nuevo. No se exigía que el empleado tuviera que solicitar la renovación de sus contratos.

3.   Al comenzar la nueva Administración Municipal en 1989, le envió una comunicación a los peticionarios notificando la fecha de vencimiento de sus contratos transitorios, que en la mayoría de los casos vencían el 30 de junio de 1989. Se les indicó que debían disfrutar sus vacaciones regulares que tenían acumuladas, antes del vencimiento de sus nombramientos.

4.   Según el nuevo Alcalde, el criterio más importante para determinar si se renovaban los contratos transitorios, era el interés del empleado en continuar trabajando en el Municipio. De ser así se lo expresaría al Director de Personal o a los Jefes de las Dependencias en que laboraban.

5.   Un gran número de los peticionarios, al recibir la notificación de la terminación de sus contratos, realizaron múltiples gestiones con funcionarios municipales conducentes a que sus contratos les fueran renovados **pero no tuvieron éxito.**

6.   **Para la determinación de renovar los contratos en 1989, el Municipio no tomó en consideración factores económicos o presupuestarios.** El Municipio no ofreció explicación satisfactoria sobre el hecho de que a algunos de los peticionarios se les indicó en junio y julio de 1989 que no había presupuesto para renovar todos los contratos transitorios, y **por otro lado, que en julio de 1989, el Municipio otorgó cincuenta (50) contratos transitorios nuevos, además de los contratos que fueron renovados.**

7.   **En julio de 1989 recibieron nombramientos transitorios cincuenta (50) personas que antes no laboraban allí, quienes eran en su mayoría afiliados al P.N.P.**

Luego de evaluada toda la prueba presentada, el foro de instancia determinó que el Municipio **<u>no había renovado los contratos de los empleados transitorios en cuestión sólo por motivaciones políticas</u>**. Concluyó que los empleados en cuestión habían sufrido un claro discrimen por razón de sus ideas políticas, lo que violaba sus derechos de expresión y asociación. En vista de ello, dictó sentencia concediendo el remedio interdictal solicitado; y ordenó expedir a favor de los peticionarios nombramientos transitorios en puestos similares a los que ocupaban a la fecha de la

terminación de sus contratos.  Ordenó la celebración de una vista para calcular los daños sufridos y los haberes dejados de recibir por los peticionarios, una vez la sentencia adviniera final y firme.

Inconforme, el Municipio acudió ante el Tribunal de Circuito de Apelaciones.  El 22 de octubre de 1999, dicho tribunal revocó la determinación de instancia.  Resolvió que una vez expirado el término de un nombramiento transitorio, el Municipio tenía plena libertad para cesantear al empleado y no venía obligado a demostrar justa causa para no renovar su contrato.  Por ello, resolvió que era innecesario verificar si la actuación del Municipio en este caso fue o no motivada por discrimen político.[1]

Por no estar de acuerdo con la determinación del foro apelativo, los empleados en cuestión acudieron ante nos, y formularon los siguientes señalamientos de error:

> A. Erró el Tribunal de Circuito de Apelaciones, al emitir una sentencia inconstitucional que interpreta la Constitución del Estado Libre Asociado de Puerto Rico, contrario a los principios de la Constitución de los Estados Unidos de América, cuando resuelve que bajo nuestra Carta Magna los empleados transitorios carecen de protección constitucional contra el discrimen político, por no tener una legítima expectativa de continuidad de empleo.

> B.  Erró el Tribunal de Circuito de Apelaciones, al revocar la sentencia parcial dictada por el Tribunal de Primera Instancia, declarando ha lugar varias demandas de discrimen político presentadas por empleados transitorios, por entender que como cuestión de derecho éstos no tienen derecho a remedio alguno, aun cuando la prueba y las determinaciones de hechos formuladas por el tribunal inferior demostraron claramente que estos fueron discriminados por consideraciones político partidista.

El 21 de enero de 2000, expedimos el recurso de Certiorari de los peticionarios, para revisar el dictamen del foro apelativo.  Luego de solicitar y obtener prórrogas ambas partes, los peticionarios presentaron su alegato el 7 de abril de 2000, y los recurridos el suyo el 22 de mayo de 2000.  Con el beneficio de ambas comparecencias, pasamos a resolver.

---

[1] Es menester señalar que el Juez Brau Martínez emitió un Voto Disidente en el cual apoyaba la sentencia emitida por el Tribunal de Primera Instancia.

II

En el caso de autos, el Municipio ha alegado que como todos los empleados demandantes tenían nombramientos transitorios, no tenían expectativa alguna de continuidad en el empleo; y que por ello, el Municipio no tenía que demostrar justa causa para la no renovación de sus contratos, independientemente de que el motivo para la no renovación fuese de índole político partidista.

Los empleados cesanteados, en cambio, sostienen que tienen el derecho a no sufrir discrimen por razón de sus ideas políticas, aunque sólo sean empleados públicos transitorios. Aducen, en esencia, que tanto la Constitución de Estados Unidos como la del Estado Libre Asociado de Puerto Rico les garantizan sus derechos de expresión y asociación y prohíben que puedan ser cesanteados aun de sus empleos transitorios si ello ocurre sólo por razones político partidistas.

El asunto en controversia nos obliga evidentemente a examinar, en primer lugar, cuál es el estado de derecho sobre el particular al amparo de la Constitución de los Estados Unidos. Veamos.

III

Desde hace varias décadas, el Tribunal Supremo de Estados Unidos, interpretando la Constitución federal, ha hecho claro que las libertades de la Primera Enmienda son tan fundamentales que, a menos que ello sea esencial al cargo, **nadie** puede ser excluido del servicio público sólo por razón de sus ideas políticas. Este principio cardinal se formuló con entera claridad precisamente con referencia a la situación de personas que **no tenían un derecho contractual o estatutario a ser re-empleados por el gobierno**. Los antecedentes de la doctrina actual se encuentran en las decisiones del Tribunal Supremo federal en casos en los cuales a unos profesores que se contrataban año por año ("year-to-year basis") las autoridades públicas nominadoras decidieron no renovar tales contratos porque dichos profesores no habían cumplimentado determinadas certificaciones que iban dirigidas a verificar si el profesor pertenecía al Partido Comunista o a alguna otra organización de fines alegadamente

"subversivos". El más alto foro judicial de Estados Unidos resolvió que eran nulas las decisiones referidas de no renovar los contratos de término fijo cuando estos expiraban, por ser violativas de los derechos que garantiza la Primera Enmienda. Véase, Keyishian v. Board of Regents, 385 U.S. 589 (1966); y Shelton v. Tucker, 364 US 479 (1960).

Posteriormente, en Perry v. Sindermann, 408 US 593, 596-97, (1972), el Tribunal Supremo federal señaló lo siguiente:

> **The first question presented is whether the respondent's lack of a contractual or tenure right to re-employment, taken alone, defeats his claim that the nonrenewal of his contract violated the First and Fourteenth Amendment. We hold that it does not.**
>
> **For at least a quarter century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not act. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Speiser v. Randall, 357 U.S. 513, 526. Such interference with constitutional rights is impermissible.**
>
> **...[W]e have applied the principle to denials of public employment. We have applied the principle regardless of the public employee's contractual or other claim to a job.**

La medular decisión del Tribunal Supremo en Perry v. Sinderman, supra, fue emitida por voto dividido. Sin embargo, cuatro años más tarde el Tribunal ratificó dicha decisión de modo unánime, en un caso similar. En Mt. Healthy City Board of Ed. v. Doyle, 429 US 274 (1976) una junta municipal decidió **no renovar el contrato** de un maestro de apellido Doyle, que **había estado empleando antes mediante contratos anuales**. El maestro, que no gozaba de permanencia en su empleo, había hecho unas expresiones por radio que no habían sido del agrado de la Junta. El Tribunal Supremo resolvió lo siguiente, en cuanto a lo que aquí nos concierne, Id. a las págs. 282-283.

> **"Doyle's claims under the First and Fourteenth Amendments are not defeated by the fact that he did not have tenure. Even though he could have been discharged for no reason whatever, and he had no constitutional right to a hearing prior to the decision not to rehire him, he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise**

**of constitutionally protected First Amendment Freedoms".
(Citas omitidas)**

Posterior al caso de <u>Perry v. Sindermann</u>, <u>supra</u>, el Tribunal Supremo volvió a reiterar su postura general sobre la inconstitucionalidad de las cesantías y despidos de empleados públicos por razón de la afiliación política de éstos, en otras decisiones importantes, a saber <u>Elrod v. Burns</u>, 427 US 347 (1976) y <u>Branti v. Finkel</u>, 445 US 507 (1980). En ambas decisiones se ratificó expresamente el principio citado antes, enunciado en el caso de <u>Perry v. Sindermann</u>. En <u>Elrod v. Burns</u>, <u>supra</u>, págs. 372-373, el Tribunal Supremo federal señaló lo siguiente:

> In summary, patronage dismissals severely restrict political belief and association. Though there is a vital need for government efficiency and effectiveness, such dismissals are on balance not the least restrictive means for fostering that end. There is also a need to insure that policies which the electorate has sanctioned are effectively implemented. That interest can be fully satisfied by limiting patronage dismissals to policymaking positions. Finally, patronage dismissals cannot be justified by their contribution to the proper functioning of our democratic process through their assistance to partisan politics since political parties are nurtured by other, less intrusive and equally effective methods. More fundamentally, however, any contribution of patronage dismissals to the democratic process does not suffice to override their severe encroachment on First Amendment freedoms. We hold, therefore, that the practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments, and that respondents thus stated a valid claim for relief.

En <u>Branti v. Finkel</u>, <u>supra</u>, a la págs. 515-516, el Tribunal Supremo enfatizó que:

> If the First Amendment protects a public employee from discharge based on what he has said, it must protect him from discharge based on what he believes. . . Unless the government can demostrate an overriding interest of vital importance requiring that a person's private beliefs conform to those of the hiring authority, **his beliefs cannot be the sole basis for depriving him of continued public employment**. (Enfasis suplido, citas omitidas)

Mas adelante, a la pág. 518, resumió la reiterada norma en los términos siguientes:

> In sum, the ultimate inquiry is not whether the label 'policemaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demostrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

Debe notarse que en Shelton v. Tucker, supra; en Keyishian v. Board of Pegents, supra; en Perry v. Sindermann, supra; en Mt. Healthy v. Doyle, supra; en Elrod v. Burns, supra; y en Branti v. Finkel, supra; los empleados en cuestión no tenían plazas de trabajo fijas. La continuidad en todos los empleos en cuestión no estaba protegida por algún contrato ni por algún estatuto. Según explicado por el propio Tribunal Supremo federal en una decisión posterior, dichos empleados eran "state workers who were employees at will with no legal entitlement to continued employment".[2] El Tribunal Supremo federal en dichos casos hizo valer la protección de la Primera Enmienda, pues, **sin que importase el tipo de puesto en cuestión**. Es decir, salvo en aquellos cargos en los cuales la afiliación política del empleado público es un elemento esencial para el desempeño de las funciones del cargo, los derechos garantizados por la Primera Enmienda prohíben que cualquier empleado público, **no importa la naturaleza de su puesto**, sea privado de continuar en dicho empleo por razón de su afiliación política.

El carácter abarcador y tajante de la inconstitucionalidad del discrimen político con respecto al empleo público, al amparo de la Primera Enmienda de la Constitución federal, fue ratificado por el Tribunal Supremo de Estados Unidos en sus próximas tres opiniones sobre el particular. En Rutan v. Republican Party, 497 US 62, 72 (1990), el Tribunal hizo meridianamente claro que el discrimen político no era permisible no sólo en relación a despidos o cesanteos de empleados públicos sino además con respecto a otras prácticas como la **contratación**, el ascenso, y el traslado de tales empleados. Resolvió el más alto foro federal lo siguiente concretamente, a las pág. 64-65:

> To the victor belong only those spoils that may be constitutionally obtained. *Elrod v. Burns*, 427 US 347, 49 L Ed 2d 547, 96 S Ct 2673 (1976), and *Branti v. Finkel*, 445 US 507, 63 L Ed 2d 574, 100 S Ct 1287 (1980), decided that the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved.
>
> Today we are asked to decide the constitutionality of several related political patronage practices—whether

---

[2] Rutan v. Republican Party of Illinois, 497 US 62, 72 (1990).

promotion, trans- fer, recall, **and hiring decisions involving low-level public employees** may be constitu- tionally based on party affiliation and support. **We hold that they may not**. (Enfasis suplido)

Mas aun, en relación directamente al asunto que aquí nos concierne, resolvió el Tribunal, a la pág. 78, que:

"Under our sustained precedent, **conditioning hiring decisions** on political belief and association plainly constitutes an **unconstitu- tional condition**..." (Enfasis suplido)

En Rutan v. Republican Party, supra, a la pág. 70, el Tribunal Supremo federal enfatizó los valores fundamentales[3] que quedan afectados por el discrimen político al reiterar que:

[Political] patronage can result in the entrenchment of one or a few parties to the exclusion of others and is a very effective impediment to the associational and speech freedoms which are essential to a meaningful system of democratic government. (Citas omitidas)

Señaló entonces, a la pág. 74, que:

". . . the preservation of the democratic process is no more furthered by the patronage promotions, transfers and **rehires** at issue here than it is by patronage dismissals" (Enfasis suplido)

Para ilustrar cuan amplia es la protección referida que surge de la Primera Enmienda, en una nota al calce, a la pág. 76, el Tribunal Supremo federal resaltó lo siguiente en Rutan:

". . . the First Amendment. . . protects state employees not only from patronage dismissals but also from even an act of retaliation as trivial as failing to hold a birthday party for a public employee when intended to punish her for exercising her free speech rights."

No puede haber dudas, pues, de lo extensa que es la protección de la Constitución federal en contra del discrimen político con respecto al empleo público, en particular cuando se trata de discrimen contra *trabajadores de poco rango* ("employees . . . in dead-end positions", Id. pág. 73; "low-level

---

[3] En Rutan el Tribunal Supremo federal enfatizó que era necesario proteger a los empleados públicos de presiones indebidas que los llevaran a abjurar o rendir sus propias creencias o afiliaciones políticas. Id. a las págs. 73-74. Por eso se ha señalado que "Rutan signals an important step in the preservation of political freedom in America". Supreme Court-Leading Cases, 104 Harvard Law Review 129, 231 (1990).

public employees", Id. pág. 65), como lo son usualmente los empleados transitorios.

En efecto, la prohibición del discrimen político en relación al empleo público de la Constitución federal es tan abarcadora que el Tribunal Supremo de Estados Unidos la ha extendido incluso a **contratistas independientes**, que no son técnicamente empleados públicos.    En Board of County Commissioners v. Umbehr, 518 US 668 (1996), la Junta de un condado decidió **no renovar** el contrato de un camionero privado que le prestaba servicios de recogido de basura al condado, por razón de sus ideas políticas.  El Tribunal Supremo federal resolvió que la decisión de no renovar el contrato referido violaba la Primera Enmienda de la Constitución de Estados Unidos. Igualmente, en O'Hare Truck Service Inc. v. City of Northlake, 518 US 712 (1996), el más alto foro judicial norteamericano también anuló, por ser inconstitucional, una decisión de un municipio de eliminar de la lista de compañías privadas elegibles para prestar servicios a éste, a una empresa de grúas cuyo dueño se había negado a hacer aportaciones a la campaña de reelección del alcalde de dicho municipio.  **En ambos casos el Tribunal Supremo federal precisó que el municipio o el condado estaban impedidos de no renovar las relaciones que los contratistas independientes habían tenido antes con ellos cuando la no renovación de dichas relaciones respondía a razones de discrimen político**.  Véase, Rotunda y Nowak, Treatise on Constitutional Law, 3rd Ed., Vol. 4, págs. 542-554 (1999).

En resumen, pues, al amparo de la Primera Enmienda de la Constitución federal, en derecho es claro que ni siquiera los empleados públicos transitorios pueden ser cesanteados por el Estado o los gobiernos municipales, cuando su acción responde sólo a razones político partidistas. Ese tipo de discrimen está claramente prohibido, aun cuando ocurra contra empleados públicos que no tienen expectativa alguna de continuidad en el puesto.  Así lo ha resuelto en numerosas ocasiones recientes el Tribunal de Circuito de Apelaciones del Primer Circuito federal, en casos de Puerto Rico en los cuales estaba concretamente en cuestión la no renovación de un contrato de término fijo de un empleado municipal o estatal con nombramiento transitorio.  Padilla García v. Rodríguez, 212 F 3d 69 (2000);

Nieves-Villanueva v. Soto-Rivera, 133 F 3d 92 (1997); Maldonado v.

Maldonado, 37 F 3d 1484 (1994); Figueroa v. Aponte Roque, 864 F 2d 947

(1989); Cheveres Pacheco v. Rivera González, 809 F 2d 125 (1987). Véase,

además, Pagán-Cuebas v. Vera Monroig, 91 F. Supp. 2d 464 (2000); y Rivera

v. Ríos, 625 F. Supp. 410 (1987). Los pronunciamientos del foro apelativo

federal expresamente señalan que sus dictámenes proceden de la Primera

Enmienda de la Constitución de Estados Unidos, según interpretada por el

Tribunal Supremo norteamericano. Así resumió el asunto el Tribunal del

Primer Circuito, por voz del Juez Lynch, en Nieves-Villanueva v. Soto

Rivera, supra, a la pág. 98:

> **This court has held that the Elrod-Branti doctrine applies to a local government's decision whether to renew the contract of a transitory employee. See Cheveras Pacheco v. Rivera González, 809 F. 2d 125 (1st Cir. 1987). A municipality may not allow transitory employees' contracts to expire if the primary motive is to punish them for their political affiliation. See id. at 127-29. This is true regardless of whether the employees have been renewed on a regular basis prior to their dismissal or, as is true of some of plaintiffs here, have served only one term. See Figueroa v. Aponte Roque, 864 F. 2d 947, 951 (1st Cir. 1989). Thus, the fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment that would require due process protections does not defeat a First Amendment claim.**
>
> **In Rutan v. Republican Party of Ill., 497 U.S. 62, 110 S. Ct. 2729, 111 L.Ed. 2d 52 (1990), the Supreme Court held that the Elrod-Branti prohibition against political affiliation discrimination applied not only to discharges, but also to significant personnel decisions such as whether to hire or promote a public employee. See Rutan, 497 U.S. at 79, 110 S. Ct. At 2739-40. Hence, even if the decision not to renew a transitory appointment [FN10] is considered a hiring decision rather than a discharge, Rutan reinforces our rule announced in Cheveras Pacheco.**

Para concluir este examen de la normativa federal sobre el asunto que

aquí nos concierne, es menester señalar que numerosos foros federales de

otros Circuitos también han resuelto concretamente que la Primera Enmienda

de la Constitución de Estados Unidos prohíbe el discrimen por razones

políticas aun en contra de empleados públicos que no gozan de una expectativa

legítima de continuar en sus puestos, por lo que dichos empleados no pueden

ser cesanteados. Véase, Pleva v. Norquist, 195 F. 3d 905 (7th Cir. 1999);

Cope v. Heltsley, 128 F. 3d 452 (6th Cir. 1997); Mc Bee v. Jim Hogg County,

730 F. 2d 1009 (CA5 Tex. 1984); Tanner v. McCall, 625 F. 2d 1183 (CA5 Fla.

1980); Vickery v. Jones, 878 F. Supp. 1179 (1995); Whited v. Fields, 581

F. Supp. 1444 (1984); Mele v. Fahy, 579 F. Supp. 1576 (1984); Visser v. Magnarelli, 530 F. Supp. 1165 (1982); Brady v. Paterson, 515 F. Supp. 695 (1981); Garreto v. Cooperman, 510 F. Supp. 816 (1981); Trippy v. Sams, 512 F. Supp. 5 (1980); Bravoso v. Harding, 507 F. Supp. 313 (1980); y, Mirabella v. Board of Elections, 507 F. Supp. 338 (1980).

IV

Pasemos a examinar ahora el asunto ante nuestra consideración, al amparo de nuestra propia Constitución.

Ya antes hemos reconocido la gran importancia social que tiene el proteger al servicio público de los vaivenes de la política partidista. Ríos Colón v. F.S.E., 139 D.P.R. 167 (1995). En reiteradas ocasiones hemos resuelto que el derecho a la libre asociación y a no ser discriminado por ideas políticas está consagrado en las secciones 1, 4, 6 y 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. Segarra v. Mun. de Peñuelas, Opinión del 16 de junio de 1998, 145 D.P.R. ___, 98 TSPR 75, 98 JTS 76. Más aun, en más de una ocasión, hemos resuelto que los empleados públicos gozan de protección en sus cargos contra el discrimen por ideas políticas. Así, hace casi treinta (30) años, en Báez Cancel v. Alcalde Mun. de Guaynabo, 100 D.P.R. 982 (1972), indicamos lo siguiente:

> **La Sec. 1 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico prescribe en forma clara que 'no podrá establecerse discrimen alguno por motivo de raza, color, . . . ideas políticas o religiosas'. La proscripción del discrimen es clara y terminante. Su texto no permite distinción alguna. Quiere decir lo que dice. Que el Estado en ninguna de sus múltiples funciones o servicios puede discriminar contra un ciudadano por el mero hecho de ser éste negro, ateo o por sus ideas políticas. Cualquier otra interpretación enervaría su eficacia. Fortalecerla y no enervarla es nuestro deber, como los principales custodios de la Constitución.**

En virtud de lo anterior incluso hemos resuelto, como principio de derecho constitucional, que no cabe el discrimen político ni siquiera contra empleados de confianza, que por la naturaleza de sus puestos, no poseen una expectativa de permanencia en ellos, pues están sujetos a la libre selección y remoción por sus superiores. Alberty v. Bco. Gub. de Fomento, Opinión del 1 de noviembre de 1999, 149 D.P.R. ___, 99 TSPR 166, 99 JTS 169; Segarra

Feliciano, supra; Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486 (1990); McCrillis v. Aut. Navieras de Puerto Rico, 123 D.P.R. 113 (1989); Colón v. C.R.U.V., 115 D.P.R. 503 (1984); Clemente v. Depto. de la Vivienda, 114 D.P.R. 763 (1983); Franco v. Mun. de Cidra, 113 D.P.R. 260 (1982); Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982).

El tema de los empleados transitorios lo hemos tenido ante nuestra consideración en situaciones anteriores, pero en ninguna de las opiniones sobre el particular de este Tribunal se ha dilucidado centralmente si dichos empleados habían sido cesanteados por razones de discrimen político de forma inconstitucional. Así pues, en Delgado v. D.S.C.A., 114 D.P.R. 177 (1983), consideramos la situación de los empleados públicos transitorios sólo en relación con las garantías procesales que les confiere la Ley de Personal. En Departamento de Recursos Naturales v. Correa, 118 D.P.R. 689 (1987), resolvimos que un empleado público que ostenta un nombramiento transitorio no tiene una expectativa real de que tal nombramiento le brinda permanencia en el empleo, ni derecho a que el mismo se le extienda constantemente. Sin embargo, en dicho caso no hubo alegación de discrimen por razón de ideas políticas. No se planteó la inconstitucionalidad de la actuación gubernamental por violar las libertades de expresión y asociación de los empleados ni su derecho a no sufrir discrimen por razón de sus ideas políticas. La alegación que se hizo fue sólo a los efectos de que la no renovación del contrato en cuestión fue una actuación caprichosa y arbitraria del Departamento. Id., a la pág. 693.

Algo similar sucedió en Orta v. Padilla Ayala, 131 D.P.R. 227 (1992), cuando volvimos a encarar la cesantía de unos empleados públicos transitorios. En ese caso reiteramos la norma de que es inconstitucional el discrimen político contra unos empleados públicos que ostentaban puestos **irregulares**. También consideramos la alegación de que la cesantía de otros empleados públicos, quienes tenían puestos transitorios, era ilícita por ser contraria a los derechos garantizados en la Ley de Personal del Servicio Público, 3 L.P.R.A. sec. 1336(6). Resolvimos que los derechos invocados sólo aplicaban a los empleados transitorios a quienes se les daba por vencido su contrato **dentro** del término de sus nombramientos. Reiteramos nuestro

dictamen en <u>Depto. Rec. Naturales v. Correa</u>, <u>supra</u>, de que esos empleados transitorios no abrigaban una expectativa de continuidad en sus puestos luego de expirados sus contratos, por lo que al concluir el término contractual no tenían la protección de la Ley de Personal del Servicio Público de Puerto Rico.  Id., a las págs. 243-245. **Nada, pues, dijimos allí sobre la inconstitucionalidad del discrimen político contra los empleados públicos transitorios debido a que la controversia que se nos planteó respecto a tales empleados se circunscribió a la cuestión de sus derechos al amparo de la Ley de Personal referida**.

En resumen, pues, aunque hemos reconocido como principio general que es inconstitucional el discrimen político contra los empleados públicos--y hemos hecho valer este principio con respecto a distintos tipos de tales empleados, como los irregulares y los de confianza--no hemos considerado normativamente su aplicación a la situación de los empleados públicos transitorios. Hemos resuelto que éstos no tienen una expectativa de continuidad en el empleo una vez vence el término de su contrato, por lo que de ordinario pueden ser cesanteados sin que sea necesario celebrar una vista previa. Pero no hemos dilucidado a fondo la cuestión de cómo aplica a estos empleados públicos transitorios los principios de nuestra propia Constitución que prohíben el discrimen político.  Debemos entonces afrontar aquí la cuestión aludida de modo directo y deliberado.

V

No cabe duda de que la reiterada norma constitucional federal, examinada en el tercer acápite de esta opinión, nos obliga.  Desde la medular decisión de <u>RCA v. Gobierno de la Capital</u>, 91 D.P.R. 416 (1964), en derecho es claro que las libertades fundamentales y las garantías personales de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico han de interpretarse de manera compatible con la protección que a sus libertades y garantías iguales o similares ofrece la Constitución de Estados Unidos.  Al amparo de nuestra propia Constitución, pues, no podemos reconocerle a los empleados públicos transitorios una protección contra el discrimen político que sea de menor grado que la que les otorga la

Constitución federal, según interpretada y aplicada por el Tribunal Supremo de Estados Unidos. RCA v. Gob. de la Capital, supra, a la pág. 427.

A igual resultado debemos llegar por nuestra propia cuenta, independientemente de lo que resulte de la jurisprudencia federal referida. Hace tres décadas, reconocimos que la proscripción del discrimen por motivo de ideas políticas que surge de la Sec. 1 del Art. II de nuestra propia Constitución **". . . es clara y terminante. Su texto no permite distinción alguna."** Báez Cancel v. Alcalde Mun. de Guaynabo, supra, pág. 987. Si no se permite el discrimen político contra los empleados de confianza ni contra los empleados irregulares, como hemos resuelto antes, tampoco puede permitirse el discrimen contra los empleados transitorios. Ello, porque como se ha señalado ya, nuestra Constitución no permite distinciones en lo que a discrimen político se refiere. Tratándose de derechos tan fundamentales, como lo son la libertad de expresión, la libertad de asociación, y la esencial igualdad de los seres humanos, no cabe distinción alguna sobre el particular entre empleados transitorios y los de confianza o irregulares. Ello es particularmente así en vista de que todos estos empleados son de hecho iguales en cuanto a la ausencia entre todos ellos de expectativas de permanencia en el cargo público.

Debemos tomar en cuenta, además, que dejar a los empleados transitorios expuestos al discrimen político privaría de protección precisamente       a       los       más       desvalidos       de

los trabajadores gubernamentales. A estos empleados no les cobijan las leyes de personal o los sistemas de mérito que protegen a otros empleados públicos. Más aun, estos empleados transitorios tienden a ser de ordinario trabajadores humildes o de escasos recursos. Sería un contrasentido interpretar que nuestra Constitución ampara a los empleados que menos lo necesitan mientras deja huérfanos de protección a los que más la necesitan.

Finalmente, debemos considerar la imperiosa finalidad de proteger y mejorar nuestro sistema democrático de vida, que se fundamenta en la confianza del pueblo y que preconiza la plena libertad de las personas para sostener y promover sus propias ideas y creencias políticas. Poca fe pueden tener en la democracia los más desvalidos cuando para poder ser fieles a sus preferencias ideológicas se les expone a la pesada carga de perder el modo de ganarse la vida.

En Puerto Rico hemos tenido una larga y lamentable historia de discrimen político a nivel municipal. De ello han pecado todos los partidos que han ejercido el poder a ese nivel. Se trata de un mal enraizado en nuestro comportamiento colectivo que es contrario a los valores fundamentales de nuestro ordenamiento jurídico, de que la dignidad del ser humano es inviolable, y de que todas las personas son iguales ante la ley. Es tiempo ya que este Tribunal le de plena vigencia a las proscripciones que emanan de nuestra propia Constitución en lo referente al discrimen político. Sólo así podemos extirpar de raíz ese

grave vicio de nuestra cultura política, que por demasiado tiempo ha permeado a la administración pública del país; vicio que no sólo menoscaba y desacredita nuestra vocación como pueblo democrático, sino que, además, le impone, sin compasión alguna, una grave carga a numerosos jefes de familia, que de buenas a primeras se encuentran desprovistos del medio de sustento material que antes tenían, con frecuencia el único a su alcance.

Resolvemos, pues, que los empleados públicos transitorios del país están protegidos por la Constitución del Estado Libre Asociado contra el discrimen político partidista, aun cuando no tengan de otro modo expectativa alguna de continuidad en el empleo.

VI

Para concluir, una vez establecido que la no renovación de un contrato de término fijo de un empleado transitorio por razón de discrimen político viola las disposiciones constitucionales aplicables, es menester preguntarse cuál es el **remedio** a concederse en este tipo de casos. Los peticionarios alegan que el remedio a concederse dependerá, en el caso de los empleados transitorios, de si la entidad nominadora continuó contratando empleados transitorios, y hasta cuándo existieron dichos puestos.

En el presente caso, el tribunal de instancia ordenó la reinstalación de los empleados cesanteados a sus puestos con carácter transitorio y dejó para dilucidar en una vista posterior los daños y salarios dejados de percibir.

El problema en relación al remedio al que tienen derecho los empleados de puestos transitorios del cual fueron ilegalmente cesanteados surge de la particular naturaleza del empleo transitorio. El patrono gubernamental puede tener razones válidas para terminar los cargos transitorios. Estos puestos transitorios son de ordinario empleos de carácter **temporero**. Las agencias públicas y los municipios nombran a los empleados transitorios de modo **provisional**, para atender necesidades de personal que han surgido súbitamente, ocasionadas por situaciones imprevistas o de emergencia, que no pueden afrontarse con el personal regular de la autoridad nominadora.

Se trata, pues, de puestos que han de terminarse en algún momento, que no pueden tener un carácter permanente. Por ello, es evidente que cuando unos empleados transitorios han sido cesanteados discriminatoriamente, como el foro de instancia resolvió que había ocurrido aquí, no puede ordenarse como remedio en todo caso la reinstalación indefinida del empleado cesanteado. No puede imponérsele a la autoridad nominadora que reponga al empleado transitorio en su cargo más allá de lo que dicho cargo hubiese durado de ordinario. Como bien señaló el Tribunal Supremo Federal en <u>Rutan v. Republican Party of Illinois</u>, <u>supra</u>, a la pág. 76:

> The First Amendment is not a tenure provision, protecting public employees from actual or constructive discharge. The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate or to not believe and not associate.

Es decir, sólo nos corresponde remediar el discrimen político. No nos compete intervenir con decisiones legítimas sobre el empleo público que hagan las autoridades nominadoras.

Con arreglo a lo anterior, sólo tienen derecho a un remedio judicial aquellos empleados públicos transitorios cuya cesantía al vencer el término fijo de su contrato respondió <u>exclusivamente</u> a razones de discrimen político. Es decir, si la autoridad nominadora puede demostrar con preponderancia de la prueba que el contrato transitorio en cuestión no iba a renovarse por falta de fondos para ello, o porque las funciones del cargo ya no eran necesarias, o porque el empleado en cuestión no había desempeñado las funciones del cargo adecuadamente, o por alguna otra razón legítima similar, entonces no importa que la cesantía hubiese respondido también a motivos de discrimen político. Como bien ha señalado el Tribunal Supremo de Estados Unidos, no procede un remedio cuando el motivo político para cesantear sólo da apoyo a una decisión válida de no renovar el contrato transitorio ("makes the employer more certain of its decision . . . not to rehire"). <u>Mt. Healthy City Board of Ed. v. Doyle</u>, <u>supra</u>, págs. 286-287.

En cambio, si la autoridad nominadora no puede demostrar con prueba preponderante que la decisión no respondió exclusivamente a razones de discrimen político, entonces debe restituirse al empleado temporero a su

cargo por un nuevo término, esto es, por el período de tiempo por el cual dicho empleado había sido contratado originalmente. También se le indemnizará por los daños, si algunos, que pueda haber sufrido como consecuencia del cesanteo. Véase, Rivera v. Ríos, supra. Lo anterior significa que si la autoridad nominadora no renueva un contrato transitorio al vencer su término sólo por razón de la afiliación política del empleado, y como tiene recursos para ello y persiste la necesidad del cargo, entonces le extiende un contrato similar a una persona de la misma afiliación política que la autoridad nominadora, toda esta actuación es nula. En tal caso, el cesanteado en cuestión tiene que ser restituido e indemnizado, conforme a lo señalado antes.

En resumen, pues, la procedencia o no de un remedio para el empleado transitorio que fue cesanteado por motivos particulares, ha de determinarse judicialmente caso a caso conforme a la prueba pertinente poniendo en balance, por un lado, la necesidad de proveer un remedio eficaz al que ha sufrido la grave injuria del discrimen político, y por otro lado, el interés público de no trastocar el carácter temporero que el empleo transitorio en cuestión tiene al amparo de las leyes de Puerto Rico.

## VII

Por los fundamentos expuestos antes, se dictará sentencia para revocar el dictamen del foro apelativo, y para devolver el caso al foro de instancia, para que continúen allí los procedimientos conforme a lo aquí resuelto.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zoraida Aponte Burgos,
Etc,

     Demandante-Peticionarios

        v.               CC-1999-911       CERTIORARI

Carlos Aponte Silva, Etc.

     Demandado-Recurridos


SENTENCIA

San Juan, Puerto Rico, a 7 de mayo de 2001.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se revoca el dictamen del foro apelativo, y se devuelve el caso al foro de instancia, para que continúen allí los procedimientos conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente con opinión escrita, a la cual se une el Juez Asociado señor Corrada del Río.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

ZORAIDA APONTE BURGOS, su
Esposo LUIS ORTIZ TORRES y
la Sociedad Legal de Ganan-
ciales comp. por ambos, et
als

      Peticionarios

         v.                      CC-99-911        Certiorari

CARLOS APONTE SILVA, en su
Carácter personal y oficial
como Alcalde del MUNICIPIO
DE AGUAS BUENAS, et als

        Recurridos

Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez, a la cual se une el Juez Asociado señor Corrada del Río.

San Juan, Puerto Rico, a 7 de mayo de 2001.

El esfuerzo del trabajador para ganar su sustento y aportar al bien colectivo, es parte integrante de la dignidad humana. Por tal razón, la Constitución de Puerto Rico prescribe sobre los derechos básicos del trabajador. **Nuestro magno documento coloca particular énfasis en aquella parte de la clase trabajadora que, por razón de su especial desvalimiento, históricamente ha necesitado, aunque no siempre recibido, protección social.**[4]

---

[4] 4 Diario de Sesiones de la Convención Constituyente 2573 (1952).

Una vez más estamos ante el drama humano de empleados transitorios, en este caso de un municipio, cuyos contratos se renovaban anualmente. Algunos de ellos fueron mantenidos por prolongados períodos de tiempo, renovándoles sus contratos como empleados transitorios, sin que el empleado tuviera que solicitar la renovación del mismo. De nuestro expediente surge el caso del señor Pedro Fernández Rivera, quien trabajó veinte y siete (27) años en el referido municipio como empleado de saneamiento por contrato transitorio en funciones que aparentan fueron continuas y permanentes, propias de un empleado regular de carrera.

En el año 1989 entró una nueva administración de gobierno al referido municipio, de otro partido político. Los demandantes de autos, todos empleados transitorios contratados por la administración municipal anterior, fueron notificados que sus contratos no serían renovados después de su fecha de vencimiento, el 30 de junio de 1989. A partir de julio de 1989, el municipio otorgó cincuenta (50) contratos transitorios nuevos a personas que no trabajaban en el mismo hasta ese momento. Esas personas, **en su mayoría**, eran afiliados al nuevo partido político de gobierno y fueron contratados para ejercer funciones similares a las descargadas por los empleados despedidos.

Por entender que este Tribunal no le imprime la protección constitucional de naturaleza social, que resulta indispensable y necesaria para aquellos trabajadores en empleos transitorios por contrato, por tiempo definido, cuando son renovados los mismos por prolongados períodos de tiempo para realizar funciones continuas y permanentes, propias de un empleado regular de carrera, DISIENTO.

I

El Artículo II, Sección 16, de la Constitución de Puerto Rico[5] dispone lo siguiente:

> Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, **a recibir igual paga por igual trabajo**, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley. (Énfasis nuestro.)

El principio de **igual paga por igual trabajo** persigue evitar el discrimen contra el trabajador que, por razón de su especial desvalimiento, históricamente ha sufrido de compensación diferente, sin que medie justificación para ello, frente a la igualdad de la labor rendida por ese trabajador.[6]

Este caso nos permite formular una normativa que atienda la necesidad de protección social de esos trabajadores, por imperativo constitucional; que de una vez y por todas erradique la desigualdad injustificada en el trato de empleados transitorios que se les

---

[5] 1 L.P.R.A. Artículo II, Sección 16, Documentos Históricos.

tiene ocupando sus empleos por períodos de tiempo prolongados, en funciones continuas y permanentes, en clara violación al principio del mérito que rige el sistema de personal en Puerto Rico, y al principio constitucional de igual paga por igual trabajo.

El empleo, mediante contrato transitorio, constituye un sistema alterno al sistema de mérito de naturaleza excepcional y de duración transitoria. De presentarse situaciones imprevistas que pueden ser atendidas mediante los mecanismos establecidos dentro del sistema de mérito, no debe recurrirse a la utilización del nombramiento de empleados transitorios. Este tipo de nombramiento no debe crear un sistema paralelo al sistema del mérito. No obstante, en contravención a dichos preceptos, algunas áreas del sector público han creado una situación anómala, con consecuencias funestas, para ese sector de la clase trabajadora que sufre las consecuencias.

En el pasado, hemos expresado nuestra preocupación por el uso del nombramiento de empleados transitorios para desempeñar funciones que propiamente corresponden a una plaza de carrera. Reconocimos que este medio ha sido tradicionalmente utilizado por el gobierno y sus dependencias para no someter a los candidatos a empleo público al proceso cualificador y competitivo que caracteriza al sistema de mérito. En muchos casos estos nombramientos se han utilizado para desempeñar por prolongados períodos de tiempo funciones que correspondían a puestos regulares, estableciéndose así una estructura paralela al sistema del mérito. Calificamos tal práctica como impermisible y devastadora sobre el sistema de mérito. Hemos puntualizado que el permitir que una persona sea nombrada en un puesto transitorio, al margen de los mecanismos de reclutamiento y retención provistos por el sistema del mérito, destruiría tal sistema y es contrario a los intereses y necesidades de nuestro país.[7]

No empece a lo expresado anteriormente, la práctica antes descrita como impermisible, ha sido y es utilizada por algunas agencias de gobierno y municipios para mantener por prolongados períodos de tiempo a empleados transitorios, renovándoles periódicamente sus contratos, realizando funciones continuas y permanentes, propias de un empleo regular. Tal práctica incluye el no brindarle a éstos la oportunidad de tener a su alcance el solicitar y participar en condiciones de igualdad, bajo el principio de mérito, en el proceso de selección de la persona que ha de llenar una plaza regular de carrera, creada para ejercer esas mismas funciones que descarga el empleado temporero. Todo ello, independientemente de la eficiencia que haya demostrado en su desempeño y ejecutoria, y de la necesidad de la creación de tal plaza para la operación regular y ordinaria de gobierno. Ese proceder crea una situación de inequidad, desigualdad y hasta de discrimen contra ese tipo de trabajador, frente al empleado regular de carrera que desempeña iguales funciones.[8]

---

[6] 4 Diario de Sesiones de la Convención Constituyente 2574 (1952).
[7] Depto. Recs. Naturales v. Correa, 118 D.P.R. 689, 700 (1987).

Concluimos, que la desigualdad en el trabajo, que nuestro magno documento rechaza, incluye aquella en la cual están situados los empleados transitorios que son utilizados por prolongados períodos de tiempo en funciones continuas y permanentes, propias de un empleo regular de carrera. Este Tribunal ha establecido que toda diferenciación en beneficios entre personas similarmente situadas, debe estar justificada por una razón constitucionalmente permisible.[9]

## II

El discrimen político está prohibido por la Constitución de Estados Unidos y la de Puerto Rico. El Tribunal Supremo de Estados Unidos se ha tenido que enfrentar en varias ocasiones a la constitucionalidad de la práctica del patronazgo político en el ámbito laboral. El patronazgo político consiste en la práctica de un oficial público de nombrar personas de su mismo partido político para puestos públicos y conferirles beneficios.[10] Concluimos que el patronazgo político no sólo comprende el reclutamiento, sino también la cesantía de empleados públicos y su sustitución, sin tomar en consideración sus méritos y en respuesta al cambio de una ideológica política por otra en el gobierno.

¿Es irrelevante la expectativa de continuidad en su empleo de aquellos empleados públicos temporeros, cuyos contratos han sido renovados periódicamente durante un prolongado período de tiempo para desempeñar funciones continuas y permanentes propias de un empleado regular de carrera, frente a la protección constitucional contra el discrimen en el empleo? Este Tribunal ha contestado tal interrogante, en el presente caso, en la afirmativa, pues sólo reconoce la expectativa de tal continuidad por el último período del contrato,[11] y su reinstalación por un período adicional, cuando la razón o motivo del despido responde **exclusivamente** a razones políticas. No considera ni le concede expectativa de continuidad alguna, bajo las circunstancias más adelante discutidas. Dictamina como permisible su cesantía, concluido el último período por el cual fue contratado, o aquel por el que fue reinstalado, bajo la circunstancia antes indicada, aunque haya sido víctima de discrimen político, entre otras razones, y mientras lo han mantenido trabajando, en

---

[8] En algunos casos no tienen la misma remuneración. En aquellos casos donde tienen la misma remuneración, no disfrutan de iguales o equivalentes beneficios marginales.

[9] Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1 (1991), a su vez, siguiendo lo establecido en Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990); P.S.P., P.P.D., P.I.P. v. Romero Barceló, 110 D.P.R. 248 (1980); Vélez v. Srio. de Justicia, 115 D.P.R. 533 (1984); Vda. de Miranda v. Srio. de Hacienda, 114 D.P.R. 11 (1983), al amparo del Artículo II, Sección 7, de la Constitución de Puerto Rico, que ordena la igual protección de las leyes a personas igualmente situadas.

[10] Branti v. Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 427 U.S. 347 (1976).

[11] Orta v. Padilla Ayala, 131 D.P.R. 227, 243; Depto. Recs. Naturales v. Correa, supra, pág. 697.

violación al principio del mérito del sistema de personal de Puerto Rico, por prolongados períodos de tiempo desempeñando una función propia de un empleado regular, y aún cuando se le ha violado su derecho constitucional a igual paga por igual trabajo. No podemos compartir tal discernimiento.

Si el Estado le brinda una expectativa legítima de retención a sus empleados, estos adquieren un interés propietario, y sólo garantizándole su derecho constitucional a un debido proceso de ley pueden ser cesanteados. Ese interés propietario puede crearse por ley, por las condiciones establecidas en el contrato de empleo, por las acciones de la autoridad nominadora o por las circunstancias particulares de ese empleo.[12]

Concluimos que es imprescindible, por imperativo constitucional, reconocer que en ciertas circunstancias surge una expectativa legítima de continuidad en el empleo, cuando un empleado temporero se encuentra en las circunstancias antes expuestas, y que la presencia de tal situación requiere la reinstalación en su empleo. Consideramos que cada caso debe evaluarse por el foro de primera instancia, de conformidad a sus circunstancias particulares. Concluido por ese foro que existe una expectativa de continuidad en el empleo de un empleado temporero, cuyo contrato transitorio ha sido renovado periódicamente por un período prolongado de tiempo para desempeñar funciones continuas y permanentes propias de un empleado regular, en violación al principio del mérito del sistema de personal de Puerto Rico y al derecho constitucional a igual paga por igual trabajo, y que, además, es cesanteado por alguna razón o motivo que está constitucionalmente protegida, dicha persona debe ser acreedora a una reinstalación en su empleo.[13] Dicha reinstalación debería concederse por un período de tiempo determinado que sea razonable; que le permita a la autoridad nominadora crear la plaza regular correspondiente para adscribir formalmente a su operación regular y ordinaria las funciones descargadas por el referido empleado, y que le permita, a su vez, a dicho empleado solicitar y participar en la obtención de la referida plaza, cumpliendo a cabalidad con el principio del mérito.[14] De eliminarse permanentemente las funciones por él realizadas, o no cualificar o no obtener la plaza regular creada, después de garantizarle igual participación en el proceso de selección, el referido empleado siempre sería acreedor a la indemnización en daños y perjuicios correspondiente, cuando se ha demostrado que el despido fue producido por discrimen político.[15]

---

[12] J. Nowak, R. Rotunda, Treatise on Constitutional Law, 3ra ed., Minnesota, Ed. West Publishing Co., 1999, pág. 78.

[13] Dicha reinstalación está condicionada a que las funciones que desempeñaba la persona en su empleo persistan y sean continuas y permanentes. De ser eliminadas permanentemente, no procedería la reinstalación del empleado. En este último caso, sólo tendría derecho a la indemnización en daños y perjuicios, de haber mediado discrimen político como motivo para la cesantía. Orta v. Padilla, 137 D.P.R. 927, 934 (1995).

[14] La creación de dicho puesto regular deberá cumplir con los requisitos dispuestos por el ordenamiento jurídico vigente.

De otra forma, la no reinstalación del empleado al puesto que ocupaba, bajo las condiciones antes expuestas, se convierte en un castigo para éste y un premio para la autoridad nominadora por sus actuaciones constitutivas de violación al principio del mérito de nuestro sistema de personal, al derecho constitucional de los trabajadores a igual paga por igual trabajo, y de la cesantía de los referidos empleados por razones vedadas por nuestra Constitución. Consideramos la posición aquí formulada no sólo como la más lógica y razonable, sino como la jurídicamente procedente.

## III

De la sentencia del Tribunal de Primera Instancia surge que ese foro no realizó en sus determinaciones de hechos un desglose específico y detallado, empleado por empleado, relacionado con aquellos que fueron cesanteados y sus sustitutos. Esto, en vista de que ese Tribunal concluyó que no todos los cincuenta (50) nuevos empleados eran pertenecientes al nuevo partido político, sino una mayoría de ellos. El Tribunal de Primera Instancia determinó, como cuestión de hecho, que "aunque todos los demandantes que declararon indicaron el nombre de una persona que alegadamente los sustituyó, no todos esos testimonios nos merecieron credibilidad en cuanto a que fueron sustituidos por una persona específica". No obstante, concluyó, como cuestión de derecho, que "la totalidad de las circunstancias envueltas, según la prueba creída, demostró que la no renovación de los contratos de los empleados transitorios fue una basada en razones políticas". Al así actuar, consideramos que erró el foro de primera instancia. Veamos.

Una demanda de un empleado público transitorio, fundada en una cesantía que responde a razones políticas, es una acción civil donde la parte demandante tiene el peso y la obligación de presentar prueba.[16] El demandante puede valerse y hacer uso de evidencia directa o circunstancial y de presunciones que le favorezcan.

Cuando no hay un motivo racional que justifique el despido de un empleado público transitorio, que está identificado claramente con un partido político, y se le sustituye por un empleado de diferente afiliación política, que resulta ser la misma de la nueva autoridad nominadora, se establece un caso prima facie o una presunción de discrimen político.[17]

Cuando la parte demandante puede establecer los hechos que activan la referida presunción de despido por razones políticas, el municipio, en este caso, podía presentar

---

[15] Orta v. Padilla, supra, pág. 934.

[16] Regla 10(A) y (B) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10 (A) y (B); McCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113, 140 (1989).

[17] Regla 14 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 14; Segarra v. Mun. de Peñuelas, res. el 16 de junio de 1998, 98 TSPR 75, 145 D.P.R. ___ (1998), 98 J.T.S. 76; Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486, 502 (1990); McCrillis v. Aut. Navieras de P.R., supra, pág. 140; Báez Cancel v. Alcalde Mun. de Guaynabo, 100 D.P.R. 982, 990 (1972).

como defensa que no hubo tal discrimen y traer prueba para refutar la referida presunción y/o que se trata de un puesto que permite el despido por razón de afiliación política.[18]

La exposición narrativa de la prueba no sostiene lo concluido por el Tribunal de Primera Instancia sobre que el despido de ciertos empleados se debió a razones políticas. No surge evidencia desfilada por la parte demandante que le permitiera al Tribunal de Primera Instancia llegar a tal conclusión sobre algunos de los demandantes de autos.[19]

IV

Por lo anteriormente expuesto, disentimos. Revocaríamos las sentencias dictadas por el Tribunal de Circuito de Apelaciones y el Tribunal de Primera Instancia, y devolveríamos el presente caso a este último para que procediera a evaluar, específica y detalladamente, la situación de cada uno de los empleados cesanteados frente a los sustitutos, a tenor con lo aquí dispuesto.


EFRAÍN E. RIVERA PÉREZ
Juez Asociado

---

[18] McCrillis v. Aut. Navieras de P.R., supra, págs. 142 y 143.

[19] Apéndice II del recurso de certiorari, págs. 126-183. Véase, por ejemplo, lo testificado por los siguientes codemandantes: Carmen López Romero, pág. 147; Elizabeth Rosa Ramos, pág. 153; Agustín Caraballo García, págs. 153-154; Tito Soto Agosto, págs. 155-156; Carmelo Acevedo Acevedo, pág. 156; Carmen Pérez Matos, págs. 156-157; José Luis Velásquez Merced, págs. 159-160; Jorge Luis Santos Torres, pág. 161; Pedro Luis Santana, págs. 163-164; Faustino López Hernández, págs. 164-165.