El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
El recurso que atendemos hoy nos ofrece la oportunidad de pronunciarnos sobre una controversia de gran relevancia. En esencia, debemos resolver si cuando un empleado público tiene una causa de acción al amparo de la Ley de Derechos Civiles federal, 42 USCA sec. 1983 (Sec. 1983), por alegado discrimen político en el empleo, le corresponde presentar su reclamación ante la Comisión Apelativa del Servicio Público (CASP)(1) o puede acudir directamente al Tribunal de Primera Instancia.
Luego de examinar la jurisprudencia federal y estatal, así como los parámetros estatutarios y reglamentarios de la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH), ahora CASP, y las doctrinas de jurisdicción primaria y la de ago-tamiento de remedios administrativos, entendemos que el empleado público reclamante puede acudir al foro de ins-tancia con su causa de acción al amparo de la See. 1983 de la Ley de Derechos Civiles federal, supra, por alegado dis-crimen político en el empleo. Así, concluimos que no pro-cede devolver el caso a CASP, como dispuso el Tribunal de Apelaciones, sino que el foro con jurisdicción para atender los reclamos de la parte peticionaria es el tribunal de instancia. Por ende, revocamos la sentencia emitida por el *1040 tribunal apelativo intermedio y remitimos el caso al foro de instancia para que se continúen los procedimientos judicia-les conforme a lo aquí resuelto.
I
En este litigio, la parte peticionaria está compuesta por un grupo de diez supervisores no docentes del Departa-mento de Educación y la entidad sin fines de lucro Educa-dores Puertorriqueños en Acción, Inc., la cual —según se expone en la demanda— se dedica a organizar y proteger los derechos de los maestros, supervisores y empleados del Departamento de Educación.(2) Mientras, la parte recu-rrida la integran el Estado Libre Asociado de Puerto Rico (Estado), el entonces Secretario del Departamento de Edu-cación, Dr. César Rey Hernández, la Dra. Lizzette Pillich Otero, ex Secretaria Auxiliar de Recursos Humanos del Departamento de Educación, y la Sra. Ileana Mattei Látimer, entonces Subsecretaria de Administración de esta agencia gubernamental.(3)
El 9 de diciembre de 2004, la parte peticionaria presentó una demanda en contra de la parte recurrida ante el tribunal de instancia. En esta, la parte peticionaria —cuyos in-tegrantes alegan ser miembros activos e identificados con el Partido Nuevo Progresista (PNP)— adujo que se vio perju-dicada cuando el entonces Secretario del Departamento de Educación (Dr. César Rey Hernández) “sin avisar, sin justa *1041 causa, violando los procesos administrativos, en forma sub-jetiva y políticamente discriminatoria [aprobó] ascensos y aumentos salariales por razones políticas discriminatorias perjudicando a los aquí demandantes”.(4)
Entre las alegaciones de la demanda, la parte peticiona-ria incluyó que “[l]a insoportable situación la ha creado la política pública y directriz administrativa, por el presente Secretario de Educación [,] Hon. César Rey Hernández, im-plantada por sus alter egos que incluyen a los Co-Deman-dados, donde han estado ascendiendo y aumentando los salarios por activismo político en el Partido Popular en el poder”.(5) Esto es, según la parte peticionaria, que se apro-baron ascensos y aumentos salariales a compañeros super-visores no docentes que en ese momento ocupaban puestos en clases de igual jerarquía que ellos y que estaban afiliados al Partido Popular Democrático (PPD).(6) La parte peticionaria también señaló que ese desbalance o inequidad creado por la parte recurrida constituye una violación de naturaleza constitucional, pues tanto la Constitución de Puerto Rico como la de Estados Unidos prohíben el discri-men por razón de creencias políticas o de asociación polí-tica, así como una violación a lo dispuesto en la Sección 1983 de la Ley de Derechos Civiles federal, supra.(7)
Por todo lo cual, la parte peticionaria solicitó al foro de instancia que: (1) dictara una sentencia declaratoria en la que estableciera que esos ascensos y aumentos salariales a *1042 ciertos supervisores no docentes, por razones políticas, fue-ron ilegales y discriminatorios; (2) ordenara al Departa-mento de Educación y a los codemandados a conceder los mismos aumentos salariales que fueron otorgados a esos supervisores no docentes y ordenara el pago retroactivo de tales aumentos; (3) estableciera que toda culpa y negligen-cia por la violación de derechos constitucionales corres-ponde a los codemandados; (4) certificara que los deman-dantes son genuinos representantes de la clase, y (5) condenara a los codemandados al pago del mismo diferen-cial que le otorgaron a los otros supervisores, intereses, daños, penalidades, costas y honorarios de abogado.
Allá para julio de 2005, el Estado contestó la demanda en representación del Departamento de Educación y dos de los funcionarios codemandados, el Dr. César Rey Hernán-dez y la Sra. Ileana Mattei Látimer. El Estado negó la ale-gación sobre discrimen político.
Entre las defensas afirmativas, el Estado esbozó que el Departamento de Educación, como autoridad nominadora y patrono de los demandantes, “tuvo razones válidas, legí-timas y no discriminatorias para llevar a cabo las acciones que la demandante califica como actos de discrimen y/o represalias en su demanda”.(8) Por todo lo cual, el Estado indicó que procedía la desestimación de la demanda o la paralización de los procedimientos por tratarse de alega-ciones “que corresponden y requieren la determinación de la pericia de la agencia administrativa, jurisdicción prima-ria y/o agotamiento de remedios administrativos”.(9)
La otra funcionaría demandada, la Dra. Lizzette Pillich Otero, compareció por derecho propio y contestó la demanda el 15 de agosto de 2005.(10) Ésta expresó que la determina- *1043 ción sobre retribuir a un empleado es una prerrogativa de la autoridad nominadora, por lo que constituye una actuación discrecional. Además, aclaró que no se viola el principio de mérito ni disposición constitucional alguna, ya que la retri-bución no es un área esencial al principio de mérito. En particular, apuntó que “[l]a retribución de un empleado se hace tomando en consideración muchos factores individua-les de cada empleado, por lo que es totalmente frívolo alegar que el presente es un pleito de clase”.(11)
En diciembre de 2010, el Estado solicitó la desestima-ción de la demanda por entender que la reclamación pre-sentada por la parte aquí peticionaria se relacionaba al principio de mérito, razón por la cual la jurisdicción prima-ria exclusiva correspondía al foro administrativo (específi-camente CASP). El Estado planteó que las alegaciones so-bre las violaciones a los derechos constitucionales, según expuestas por los demandantes, eran incidentales a la im-pugnación de los ascensos y aumentos de sueldo concedidos a sus compañeros de trabajo que estaban afiliados al PPD. Además, argüyó que la parte peticionaria no estableció en sus alegaciones un agravio de tan patente intensidad que justificara obviar el trámite administrativo, por cuanto el foro de instancia carecía de jurisdicción para atender la controversia planteada y el caso debía desestimarse.
Oportunamente, en enero de 2011, la parte aquí peticio-naria presentó su oposición a la moción de desestimación del Estado. En esa oposición, indicó que su reclamación “no en-foca en el principio de mérito, sino en una campaña de per-secución y discrimen político contra éstos por apoyar al [PNP], manifestado en la negativa de concederle reclasifica-ciones y aumentos salariales (pasos por méritos y otros)”.(12) *1044 Añadió que mientras a ellos se le denegaban, “estos mismos beneficios se le concedían a empleados afiliados al [PPD]”, por lo que, a la luz de estas alegaciones, es que se debían tomar en consideración los argumentos de las partes.(13) Asimismo, la parte peticionaria reiteró que sus reclamos ema-naban de la Ley Núm. 100 de 30 de junio de 1959 (29 LPRA sec. 148 et seq.) y la See. 1983 de la Ley de Derechos Civiles federal, supra. También argumentó que no procedía agotar los remedios administrativos, pues no se había iniciado un procedimiento ante el foro administrativo.
A su vez, la parte peticionaria mencionó que el Tribunal Supremo federal “ha establecido consistentemente que no es necesario agotar los remedios administrativos previo a presentar una reclamación a tenor con la sección 1983”.(14) Para finalizar, planteó que aunque entiende que el asunto jurisdiccional se puede argumentar en cualquier momento, expresó que la moción de desestimación presentada por la parte recurrida fue a destiempo, ya que el pleito fue pre-sentado en 2004, se encontraba en una etapa avanzada de los procedimientos y se habían realizado cerca de 17 deposiciones.(15) Sobre esto, señaló que sería irrazonable y oneroso tener que presentar su caso ante otro foro, pues debido al tiempo transcurrido cualquier remedio resultaría inadecuado, se les provocaría un daño irreparable y la dilación tornaría en inútil su reclamo.(16) Por todo lo cual, la parte peticionaria solicitó la denegatoria de la petición de desestimación.
Finalmente, el 20 de enero de 2011 (notificada el 24 de enero de 2011) el tribunal de instancia declaró “no ha lu-gar” la moción de desestimación y ordenó la continuación del trámite, según calendarizado. Inconforme con la deci-sión, el 23 de febrero de 2011, la Procuradora General —en *1045 representación de la parte aquí recurrida— presentó un recurso de certiorari ante el Tribunal de Apelaciones.(17) Posteriormente, el 7 de marzo de 2011, la parte aquí peticionaria presentó su oposición al recurso de certiorari.(18)
Así las cosas, el 10 de junio de 2011 —notificada el 20 de junio de 2011— el Tribunal de Apelaciones revocó la reso-lución recurrida y refirió el caso a CASP para que ese foro continuara con los procedimientos. Asimismo, expresó que el tribunal de instancia retendría jurisdicción exclusiva-mente sobre la acción en daños y perjuicios.
El foro apelativo intermedio señaló que los demandan-tes (la parte aquí peticionaria) debían presentar sus recla-mos, en primera instancia, ante el foro administrativo fa-cultado para atender los asuntos relativos al principio de mérito, entiéndase CASP, y allí demostrar que son acree-dores de los ascensos y aumentos salariales que reclaman.(19) Esto es, que debían agotar los remedios admi-nistrativos y luego podrían solicitar revisión judicial si les interesaba. A su vez, el Tribunal de Apelaciones añadió que la alegación de discrimen político no era suficiente para detener el cauce administrativo y tampoco se había demos-trado que hubiese un agravio de tan grave y patente inten-sidad que justificara eludir el cauce administrativo de ma-nera que procediera un reclamo al amparo de los derechos constitucionales.(20)
El 5 de julio de 2011, la parte aquí peticionaria solicitó reconsideración al Tribunal de Apelaciones. Argumentó *1046 que: (1) la Ley Núm. 184-2004 conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico (Ley Núm. 184), 3 LPRA see. 1461 et seq., no establece una ju-risdicción primaria exclusiva de CASARH para atender sus reclamos; (2) la reclamación es por violación de dere-chos constitucionales por discrimen político en el sector pú-blico, por lo que el foro con jurisdicción para atenderla es el tribunal de instancia, y (3) según la jurisprudencia federal, no es necesario agotar los remedios administrativos antes de presentar una reclamación conforme a la See. 1983 de la Ley de Derechos Civiles federal, supra. Por todo lo cual, solicitó al tribunal apelativo intermedio que reconsiderara su decisión y, en consecuencia, confirmara la orden del foro de instancia que denegó la moción de desestimación pre-sentada por la parte aquí recurrida y que ordenó la conti-nuación de los procedimientos.
Allá para el 11 de agosto de 2011 —notificada el 19 de agosto de 2011 — , el Tribunal de Apelaciones ordenó a la Procuradora General que se expresara sobre la solicitud de reconsideración presentada. En particular, el foro apela-tivo intermedio requirió expresarse sobre dos aspectos par-ticulares: (1) que la Ley Núm. 184, supra, no concede juris-dicción exclusiva a CASARH para atender reclamos como los incluidos en la demanda, y (2) que el caso de autos trata sobre discrimen político, por lo que debe ser el foro de ins-tancia y no CASARH el que lo atienda y dilucide.(21)
' En cumplimiento de orden, el 19 de septiembre de 2011, la Procuradora General presentó un escrito de oposición a la reconsideración, en el que indicó lo siguiente:
[c]iertamente, la Ley Núm. 184, supra, no establece de forma específica que la CASARH, ahora CASP, tendrá juris-dicción primaria exclusiva para atender los asuntos relativos al principio de mérito tales como el pago de salarios y los ascensos. Sin embargo, conforme a lo resuelto por el Tribunal *1047 Supremo en Rivera Ortiz v. Mun. de Guaynabo, 141 DPR 257 (1996), lo anterior no es óbice para que se concluya que en efecto la Asamblea Legislativa le delegó a la agencia esa facultad.(22)
Añadió que las alegaciones de discrimen político presen-tadas por la parte aquí peticionaria “están supeditadas a la procedencia o no de los ascensos y los aumentos salariales, los cuales, por ser áreas esenciales del principio de mérito, son de jurisdicción exclusiva de la CASARH, ahora CASP”.(23)
Así pues, la Procuradora General solicitó que se decla-rara “no ha lugar” la moción de reconsideración y se deses-timara la demanda por falta de jurisdicción sobre la materia. Sobre esto último planteó que CASARH perdió jurisdicción para adjudicar los asuntos relacionados con el principio de mérito, pues la parte aquí peticionaria no pre-sentó su recurso ante el foro administrativo en el término jurisdiccional. Ante esa situación, alegó que la decisión de la autoridad nominadora (Departamento de Educación) de no conceder los ascensos y los aumentos salariales recla-mados advino final y firme, lo que impedía que el foro de instancia pudiera atender la controversia sobre la alega-ción de discrimen político.(24)
Luego, el 29 de septiembre de 2011, la parte peticiona-ria replicó y enfatizó en que las reclamaciones de discri-men no se supeditan a la procedencia de los ascensos y los aumentos salariales, sino que lo principal es el reclamo por discrimen político y su evidencia. Asimismo, planteó que “habiendo establecido un caso prima facie de discrimen po-lítico, no se puede considerar éste como uno de impugna-ción de determinaciones laborales o de mérito”.(25)
Luego de evaluar los planteamientos de ambas partes, *1048 el 11 de octubre de 2011 —notificada el 18 de octubre de 2011— el Tribunal de Apelaciones declaró “no ha lugar” a la moción de reconsideración presentada por la parte aquí peticionaria (los empleados demandantes). Planteó que no aplicaba la “defensa de Mt. Healthy” sobre caso prima facie de discrimen político, porque lo formulado por la parte pe-ticionaria es una “mera alegación de discrimen”.(26) A su vez, reiteró que los reclamos de ascensos y aumentos sala-riales constituyen áreas esenciales al principio de mérito, por lo que conforme a la Ley Núm. 184, supra, el foro con jurisdicción es CASP. Añadió que corresponderá a ese ente administrativo adjudicar si los demandantes “son merece-dores de los ascensos y aumentos salariales que reclaman y probar que hubo criterios políticos para negarles a éstos sus reclamos mientras se beneficiaba a otros empleados por igual razonamiento”.(27)
Inconforme con la determinación del foro apelativo in-termedio, el 17 de noviembre de 2011, la parte peticionaria presentó un recurso de apelación ante esta Curia. Se se-ñala la comisión de los errores siguientes:
[...] Erró el Honorable Tribunal de Apelaciones al considerar el recurso de certiorari y aceptar los escritos presentados por la parte demandada. [...] Erró el Honorable Tribunal de Ape-laciones al determinar que la CASARH, ahora la CASP, posee jurisdicción exclusiva para entender en las reclamaciones de la parte demandante por ser relativas a ascensos y aumentos salariales y no sobre discrimen político que debe ventilarse ante el Tribunal de Primera Instancia. Recurso de Apelación, pág. 10.
Acogimos el recurso como una petición de certiorari y expedimos el auto el 10 de febrero de 2012. La parte peticionaria presentó su alegato el 18 de abril de 2012 y la Procuradora General presentó su alegato en oposición el 2 de julio de 2012. Posteriormente, el 10 de julio de 2012 la *1049 parte peticionaria presentó una réplica al alegato en oposición. Así las cosas, el 3 de agosto de 2012 el caso quedó sometido para su adjudicación. Con el beneficio de las comparecencias de ambas partes, resolvemos.
II
A. La Regla 10.2 de Procedimiento Civil
La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, “establece los fundamentos por los que una parte puede solicitar la desestimación de una demanda presentada en su contra, a saber: falta de jurisdicción sobre la materia o la persona, insuficiencia del emplazamiento o su diligenciamiento, dejar de exponer una reclamación que justifique la concesión de un remedio o dejar de acumular una parte indispensable”.(28)
Al evaluar una moción de desestimación, los tribunales tienen que dar por ciertas y buenas todas las alegaciones fácticas incluidas en la demanda. Torres, Torres v. Torres et al., 179 DPR 481, 501 (2010). Además, hay que interpretar esas alegaciones de la forma más favorable a la parte demandante. Harguindey Ferrer v. U.I., 148 DPR 13, 30 (1999). Así pues, para desestimar un caso por falta de ju-risdicción sobre la materia “es necesario determinar si, tomando como cierto lo alegado por el demandante, el foro tiene jurisdicción para atender el reclamo”. Íd.
Nótese que al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y “únicamente procedería cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante”.(29) *1050 Conforme la Regla 10.8(c) de Procedimiento Civil, 32 LPRA Ap. V, una vez surge —por indicación de las partes o de algún otro modo— que el tribunal carece de jurisdicción, procede la desestimación del pleito.(30)
B. La jurisdicción de la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH), ahora la Comisión Apelativa del Servicio Público (CASP)
La jurisdicción y el funcionamiento de las agencias administrativas se derivan y, a su vez, se delimitan por su ley habilitadora y su reglamento. Al aprobar la ley orgánica de una agencia, la Asamblea Legislativa autoriza y delega a esta los poderes necesarios para que actúe de acuerdo con el propósito que persiguió el legislador con su creación.(31) Asimismo, en múltiples ocasiones hemos ex-presado que “al interpretar el alcance de los poderes delegados a una agencia administrativa, no debemos limitar el análisis a una interpretación restrictiva de su estatuto habilitador”.(32)
En virtud de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como la Ley de Personal del Servicio Público, 3 LPRA sec. 1301 et seq. (derogada), la Legislatura creó la Junta de Apelaciones del Sistema de Administración de Personal (JASAP). Posteriormente, esa ley fue derogada mediante la aprobación de la Ley Núm. 184-2004 (Ley Núm. 184), según enmendada, conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público, 3 LPRA sec. 1461 et seq. La Ley Núm. 184, supra, estableció la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH) *1051 como el organismo adjudicativo sustituto de JASAP y le confirió jurisdicción apelativa sobre todas las reclamacio-nes de los empleados públicos no organizados sindical-mente, las cuales se relacionaran con el principio del mérito.(33) Conforme a esta ley, las acciones relacionadas al principio del mérito son: clasificación de puestos, reclutamiento y selección, ascensos, traslados y descensos, adiestramiento, y retención.(34)
Al amparo de la Ley Núm. 182-2009, conocida como la Ley de Reorganización y Modernización de la Rama Ejecutiva 2009 (3 LPRA sec. 8821 et seq.), se creó el Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, mejor conocido como el Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3 LPRA Ap. XIII. Mediante este último se estableció la nueva Comisión Apelativa del Servicio Público (CASP), en la cual se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP).(35)
Específicamente, CASP es un organismo cuasijudicial en la Rama Ejecutiva, que se especializa en asuntos obrero patronales y del principio de mérito. Esa entidad atiende casos laborales, querellas y asuntos de administración de recursos humanos, ello en cuanto a los empleados cobijados por la Ley Núm. 45-1998 (Ley 45) conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, 3 LPRA see. 1451 et seq., y aquellos empleados cubiertos por la Ley Núm. 184.(36)
*1052 Por su parte, en el Art. 12 del Plan de Reorganización Núm. 2 de 2010, supra, se especificó cuál sería la jurisdicción apelativa de CASP. Ese artículo expresa lo siguiente:
La Comisión tendrá jurisdicción exclusiva sobre las apela-ciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los municipios en los casos y por las personas que se enumeran a continuación:
(a) Cuando un empleado, dentro del Sistema de Administra-ción de los Recursos Humanos, no cubierto por [la Ley Núm. 45 de 25 de febrero de 1998, según enmendada,] conocida como la “Ley de Relaciones del Trabajo del Servicio Público”, alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de [la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, la Ley Núm. 81 de 30 de agosto de 1991, según enmendada,] conocida como la “Ley de Municipios Autónomos”, los reglamentos que se aprueben para instrumentar dichas leyes, o de los regla-mentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable.
(b) Cuando un ciudadano alegue que una acción o decisión le afecta su derecho a competir o ingresar en el Sistema de Ad-ministración de los Recursos Humanos, de conformidad al principio de mérito.
(c) Cuando un empleado irregular alegue que la autoridad nominadora se ha negado injustificadamente a realizar su conversión a empleado regular de carrera, según dispone [la Ley Núm. 110 de 26 de junio de 1958, según enmendada, conocida] como “Ley de Empleados Irregulares”.
(d) Cuando un Administrador Individual alegue que una ac-ción, omisión o decisión de la Oficina es contraria a las dispo-siciones generales de la [Ley 184], según enmendada, en las áreas esenciales al principio de mérito.
(e) La Comisión tendrá jurisdicción sobre el personal do-cente y clasificado del Departamento de Educación y el personal civil de la Policía de Puerto Rico, que no estén sindicados bajo la [Ley 45], según enmendada.
(f) La Comisión podrá tener jurisdicción apelativa volunta-ria sobre los empleados no organizados sindicalmente de aque-llas agencias excluidas de la aplicación de la [Ley 184], según enmendada, y las corporaciones públicas que operen como ne-gocio privado que se sometan voluntariamente al proceso ape-lativo y adjudicativo de la Comisión. El procedimiento y costo para que puedan acogerse a esta jurisdicción se establecerá, mediante reglamento.
*1053 (g) Cualquier asunto proveniente u originado de la adminis-tración de los recursos humanos no cubierto en otras leyes o convenios colectivos.
En fin, CASP se creó como el ente adjudicativo con ju-risdicción apelativa exclusiva para atender y adjudicar las apelaciones de los empleados públicos del Gobierno de Puerto Rico surgidas como consecuencia de acciones o de-cisiones de los administradores individuales y los munici-pios en cuanto a las acciones de personal relacionadas con el principio de mérito. Así se atendió el propósito jurídico medular de que sea la agencia especializada en determi-nado asunto la que lo atienda, conforme a la autoridad delegada por ley.(37)
C. La Ley de Derechos Civiles federal y el discrimen político
La Sec. 1983 de la Ley de Derechos Civiles federal, supra, establece —en lo pertinente— que:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer’s judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
El mencionado estatuto federal constituye “un vehículo para que los ciudadanos puedan hacer valer los derechos que confieren la Constitución y las leyes de Estados Unidos frente a aquellas personas que abusan de su poder cuando *1054 actúan so color de autoridad estatal”.(38) Tal como ha expresado el Tribunal Supremo de Estados Unidos, es importante recalcar que la See. 1983 de la Ley de Derechos Civiles federal, supra, no constituye en sí una fuente de derechos sustantivos, sino que provee un mecanismo para vindicar cualesquiera derechos civiles que se hayan conferido. Así, el primer paso en este tipo de reclamación es identificar cuál es el derecho constitucional alegadamente infringido.(39)
Es conocido que los tribunales estatales podemos ejercer jurisdicción concurrente sobre pleitos basados en la Constitución, las leyes y los tratados de Estados Unidos, a excepción de cuando esa jurisdicción es, expresa o implícitamente, exclusiva de las cortes federales. (40) En lo que respecta a la Ley de Derechos Civiles federal hace más de tres décadas expresamos en Acevedo v. Srio. Servicios Sociales, 112 DPR 256, 259 (1982), que “no se desprende del texto o el historial legislativo del estatuto intención alguna del Congreso [de Estados Unidos] de conferirles a los tribunales federales jurisdicción exclusiva sobre este género de casos”. Asimismo, allí indicamos que el Tribunal Supremo de Estado Unidos ha establecido que las cortes estatales “pueden ejercer jurisdicción concurrente sobre pleitos fundados en la Sec. 1983”.(41)
Así pues, en aquella ocasión en 1982 resolvimos que el sistema judicial de Puerto Rico tiene jurisdicción concurrente para resolver pleitos al amparo de la Ley de Derechos Civiles federal. Debido a que esta es una causa de acción federal sobre la que ejercemos jurisdicción concu-rrente, los tribunales de Puerto Rico “estamos obligados a *1055 seguir nuestras propias opiniones anteriores y las decisio-nes del Tribunal Supremo de los Estados Unidos”.(42)
Conforme a la jurisprudencia federal, un demandante puede prevalecer en su reclamo por violación a sus derechos civiles al amparo del mencionado estatuto si demuestra que el demandado actuó so color de autoridad y esa actuación le privó de los derechos garantizados por la Constitución y las leyes de Estados Unidos.(43) Así, hemos mencionado que “en Estados Unidos se han llevado acciones bajo la aludida sección en violación de la Primera Enmienda cuando se alega haber sido objeto de actos de discrimen político”.(44) Es decir, que se ha reconocido que en virtud de la See. 1983 de la Ley de Derechos Civiles federal, supra, pueden presentarse acciones civiles en aquellos casos en los que funcionarios gubernamentales hayan incurrido en actuaciones discriminatorias en el empleo, ello en violación a los derechos de la libertad de expresión y de asociación.
Haciendo referencia al importante caso de Rutan v. Republican Party of Illinois, 497 US 62 (1990), esta Curia declaró que el Tribunal Supremo de Estados Unidos “hizo meridianamente claro que el discrimen político no era permisible no sólo en relación a despidos o [cesantías] de empleados públicos, sino además con respecto a otras prácticas como la contratación, el ascenso y el traslado de tales empleados”. (Énfasis suprimido).(45) En particular, la Corte Suprema federal indicó lo siguiente:
We therefore determine that promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees.(46)
*1056 Además, el Tribunal Supremo federal añadió lo si-guiente:
The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees’ freedom to believe and associate, or to not believe and not associate.(47)
Siguiendo la doctrina federal esbozada en Branti v. Finkel, 445 US 507 (1980), dos años después resolvimos en Ramos v. Srio. de Comercio, 112 DPR 514, 516 (1982), que no se puede discriminar contra un empleado público por sus creencias políticas “a menos que el gobierno pueda demostrar ‘un interés superior’ de importancia vital que requiera que las creencias privadas de la persona coincidan con la autoridad nominadora”.
Más adelante, en Aponte Burgos v. Aponte Silva, 154 DPR 117, 121 (2001), nos expresamos acerca de la importante protección que ofrece la Constitución federal en contra del discrimen político en el empleo público. Allí ex-pusimos lo siguiente:
Desde hace varias décadas, el Tribunal Supremo de Estados Unidos, interpretando la Constitución federal, ha hecho claro que las libertades de la Primera Enmienda son tan fundamen-tales que, a menos que ello sea esencial al cargo, nadie puede ser excluido del servicio público sólo por razón de sus ideas políticas. (Énfasis en el original).
Como manifestamos en Abrams Rivera v. ELA, 178 DPR 914, 935 (2010), tanto la Constitución de Estados Unidos como la Constitución de Puerto Rico proveen protección contra el discrimen por motivo de ideas políticas. Y, además, en el contexto del empleo público esa protección cobija a los empleados permanentes, irregulares, transitorios y de confianza. íd., págs. 935-936.(48) Una demanda por *1057 discrimen político es una acción civil ordinaria en la cual la parte demandante tiene el peso y la obligación primaria de presentar prueba, para lo que puede utilizar evidencia circunstancial y las presunciones que le favorezcan.(49)

D. Las doctrinas de jurisdicción primaria y agotamiento de remedios administrativos y las acciones al amparo de la Sec. 1983 de la Ley de Derechos Civiles federal

En nuestro ordenamiento jurídico existen unas normas de autolimitación judicial, entre las cuales se encuentran las doctrinas de jurisdicción primaria y la de agotamiento de remedios administrativos. Estas doctrinas “tienen el fin común de coordinar y armonizar la labor adjudicativa de los foros administrativos y los judiciales”.(50) En particular, hemos expresado que ambas “cumplen el objetivo de man-tener un adecuado balance y distribución de poder y tareas entre las agencias administrativas y el poder judicial”.(51)
Como hemos reiterado, la doctrina de jurisdicción primaria pretende determinar si es a la agencia administrativa o al tribunal a quien corresponde la intervención inicial en una controversia.(52) Mientras, la doctrina de agotamiento de remedios administrativos se circunscribe a que los tribunales discrecionalmente se abstienen de revisar la actuación de una agencia hasta tanto la parte afectada por esa actuación agote todos los remedios administrativos disponibles, de manera tal que la determinación administrativa refleje la postura final de la agencia.(53)
*1058 Así, en Mun. de Caguas v. AT & T, 154 DPR 401, 408 (2001), expresamos que:
Debe notarse que de ordinario la norma de agotamiento de remedios administrativos se aplica en casos en los cuales una parte, que instó o tiene instada alguna acción ante una agen-cia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible. Es decir, la norma se invoca usualmente para cues-tionar la acción judicial de un litigante que acudió original-mente a un procedimiento administrativo o era parte de éste y que recurrió luego al foro judicial aunque aún tenía remedios administrativos disponibles. (Énfasis en el original).
En relación con las doctrinas mencionadas, en ELA v. 12,974.78 metros cuadrados, 90 DPR 506, 513 (1964), señalamos lo siguiente:
[l]a doctrina de jurisdicción primaria no debe confundirse con la que requiere que se agoten los procedimientos administra-tivos antes de acudirse a los tribunales, aunque ambas son germanas y persiguen el mismo fin: poner orden en la admi-nistración de la justicia y armonizar el funcionamiento de la rama judicial con el de su rama hermana, la ejecutiva. La doctrina que requiere que se agoten los procedimientos admi-nistrativos determina la etapa en la cual el litigante puede recurrir a los tribunales; la de la jurisdicción primaria deter-mina qué organismo debe hacer la determinación inicial del asunto. (Citas omitidas).
De igual manera, el profesor Demetrio Fernández Quiñones —haciendo referencia a Quiñones v. A.C.A.A., 102 DPR 746 (1974)— plantea que “existe una aparente confu-sión de parte de la mayoría del Tribunal en lo que respecta a si el problema planteado es de jurisdicción primaria o de agotamiento de los recursos administrativos”.(54) Añadió que “[c]on base en el hecho de que se presentó la acción directamente ante el tribunal y se hace caso omiso de la *1059 agencia, es incuestionable que se trata de una cuestión de jurisdicción primaria”.(55)
Por otro lado, es importante considerar lo resuelto por el Tribunal Supremo de Estados Unidos en Patsy v. Board of Regents of the State of Fla., 457 US 496, 500 (1982). Allí, el Tribunal Supremo Federal, citando a Steffel v. Thompson, 415 US 452, 472-473 (1974), indicó lo siguiente: “[w]hen federal claims are premised on [sec. 1983] —as they are here— we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights”. Así, la Corte Suprema federal declaró categóricamente en Patsy que el agotar los remedios administrativos no es un prerrequisito para una acción al amparo de la Sec. 1983 de la Ley de Derechos Civiles federal, supra.(56) El Alto Foro federal ex-presó lo siguiente en aquella ocasión:
[T]his Court has stated categorically that exhaustion is not a prerequisite to an action under §1983, and we have not deviated from that position in the 19 years since McNeese [u. Board of Education, 373 US 668 (1963)].(57)
En Pierson Muller I v. Feijoó, 106 DPR 838, 852 (1978) (En reconsideración), nos expresamos en términos de que “[e]l amplio ámbito de [la] Ley de Derechos Civiles de Puerto Rico, con raíz filosófica y filológica en 42 USC. *1060 see. 1983 y con igual eficacia que la Ley del Congreso, pro-vee en el Tribunal General de Justicia de Puerto Rico el foro apropiado para la vindicación del derecho del indivi-duo frente al Gobierno”. (Escolio omitido) Asimismo, enfatizamos que “[f]ue a los tribunales que la Asamblea Legislativa remitió la reivindicación de derechos fundamentales garantizados por la Constitución”. (Enfasis suplido). Id., pág. 851.
A finales de los años 90, en Igartúa de la Rosa v. A.D.T., 147 DPR 318, 332 (1998), indicamos que el empleado público que reclame a su patrono una indemnización por violación a sus derechos civiles “queda excusado de acudir en primera instancia al foro administrativo para reclamar cualquier responsabilidad civil de dicho patrono”. (Énfasis suplido). En ese caso la demandante fundamentó su reclamación en que se violaron sus derechos civiles al ser discriminada por su afiliación política. Invocó la Ley de Derechos Civiles federal y la estatal, entre otras leyes.
Con particular pertinencia a la controversia ante nuestra consideración, el profesor Fernández Quiñones ex-presa que la excepción a la doctrina de agotamiento de remedios administrativos basada en la violación de derechos civiles “ha sido ubicada erróneamente [...] Lo que en ella se establece trata sobre la ausencia de jurisdicción y no de una excepción a la doctrina del agotamiento de los remedios administrativos: ‘La reivindicación de los derechos constitucionales corresponde y puede reclamarse en primera instancia en los tribunales de justicia, sin que tenga jurisdicción sobre ello el foro administrativo’ ”. (Citas omitidas).(58)

E. La Ley Núm. 64-2006

El 17 de febrero de 2006 se aprobó la Ley Núm. 64-2006 (Ley Núm. 64) con el propósito de añadir un inciso *1061 (12) a la Sec. 13.9 del Art. 13 de la Ley Núm. 184-2004, supra, conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico (Ley Núm. 184), supra. Según la Exposición de Motivos de la Ley Núm. 64, supra, la inclu-sión de ese inciso fue para facultar a CASARH (ahora CASP) “a conceder indemnizaciones económicas por los da-ños y perjuicios sufridos por los servidores públicos de Puerto Rico”. Esta Ley Núm. 64, supra, comenzó a regir a los 180 días de su aprobación, es decir en agosto de 2006.
El inciso (12) de la Sec. 13.9 del Art. 13 de la Ley Núm. 184 dispone:
Sección 13.9.-FACULTADES DE LA COMISIÓN
La Comisión tendrá, entre otras, las siguientes facultades: (1) [-]
(12) La Comisión tendrá facultad para conceder indemniza-ciones por daños y perjuicios e imponer multas administrati-vas en todo tipo de discrimen que sea probado por los emplea-dos que acuden ante este foro, sin menoscabo de los derechos de los servidores públicos de recurrir al foro judicial para el reclamo de daños y perjuicios cuando no lo reclamen ante la Comisión Apelativa. Exposición de Motivos de la Ley Núm. 64-2006, pág. 2.
Actualmente la mencionada disposición constituye el inciso (j) del Art. 8 del Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, mejor conocido como el Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3 LPRAAp. XIII.
III
Atendemos el primer error señalado por la parte peticio-naria, específicamente en torno a que el Tribunal de Ape-laciones erró al considerar el recurso de certiorari presen-tado por la parte aquí recurrida y al aceptar un escrito presentado por esa parte. En particular, la parte peticiona- *1062 ria planteó que el foro apelativo intermedio carecía de ju-risdicción para atender el recurso debido a que la parte aquí recurrida no incluyó copia de la demanda en su Peti-ción de certiorari ante ese tribunal, por lo que no se había perfeccionado el recurso.
En su Alegato en oposición, la parte aquí recurrida aceptó que, por error e inadvertencia, no incluyó copia de la demanda como parte del apéndice del recurso que pre-sentó en el Tribunal de Apelaciones. No obstante, señaló que el defecto fue subsanado por la parte aquí peticionaria, ya que esta incluyó copia de la demanda en su oposición al recurso.
Concluimos que la omisión de incluir el mencionado do-cumento en el apéndice del recurso no provocó un impedi-mento real y meritorio para que el foro apelativo interme-dio atendiera el caso en los méritos, pues el documento fue suplido posteriormente por la parte aquí peticionaria.(59) Esto es, esa omisión no privó de jurisdicción al Tribunal de Apelaciones, foro que contó con todos los elementos de jui-cio necesarios para considerar el asunto planteado ante su consideración. Por todo lo anterior, no se cometió el primer error señalado en la Petición de certiorari.
En torno al segundo error, nos corresponde determinar si la parte peticionaria, que entabló una causa de acción al amparo de la See. 1983 de la Ley de Derechos Civiles federal, supra, por alegado discrimen político en el empleo pú-blico, le correspondía presentar su reclamación ante CASP o podía acudir directamente al foro de instancia.
Luego de evaluar tanto el expediente del caso como los argumentos esbozados por ambas partes, concluimos que *1063 el foro apelativo intermedio sí erró en su determinación de referir el caso a CASP.
En Abrams Rivera v. ELA, supra, pág. 935, reiteramos que “es función ineludible de este Tribunal el dar vigencia a las garantías constitucionales establecidas en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico para la protección de los derechos individuales y esto incluye la garantía constitucional contra discríme-nes por motivo de ideas políticas”.(60)
Por todo lo anterior, resolvemos que un empleado público que tenga una reclamación al amparo de la See. 1983 de la Ley de Derechos Civiles federal, supra, por alegado discrimen político en el empleo, puede acudir directamente al tribunal de instancia a presentar su reclamo. En consecuencia, no procedía la moción de desestimación presentada por el Estado en el caso de autos. Véanse: Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920 (2011); Torres, Torres v. Torres et al., supra; Harguindey Ferrer v. U.I., supra.
IV
Por los fundamentos expuestos, se revoca la decisión del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedi-mientos consistentes con este dictamen.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco no interviene.

 En virtud del Plan de Reorganización Núm. 2 de 26 de julio de 2010 se creó la Comisión Apelativa del Servicio Público (CASP) para fusionar la Comisión Apela-tiva del Sistema de Administración de Recursos Humanos del Servicio Público (CA-SARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP).

 Los supervisores no docentes son: Ramonita Colón Rivera, María E. Crespo Virella, Lyzette Del Valle Lugo, Nitza M. García Narváez, Tenn D. González Irizarry, José A. Lasanta Robles, Sonia I. Nieves Ramírez, Mildred Ortiz Figueroa, Alfredo Rodríguez Leandry y Orlando Santiago Gómez. En la demanda, estos plantearon que son miembros activos y están identificados con el Partido Nuevo Progresista. (PNP).
Este grupo de diez supervisores no docentes y la organización Educadores Puer-torriqueños en Acción, Inc. (ambos la parte peticionaria) solicitaron al tribunal de instancia que se les certificara como representantes de la clase compuesta por tres mil supervisores del Departamento de Educación porque, según estos, han sido dis-criminados por razones de creencias políticas o asociación política. Véase Apéndice del Recurso de apelación, págs. 56-58.

 A estos tres funcionarios se les demandó en su capacidad personal y oficial.

 Apéndice del Recurso de apelación, pág. 61. Luego de las elecciones generales en noviembre de 2000, hubo un cambio en la administración del gobierno central en enero de 2001 al asumir la gobernación la Hon. Sila M. Calderón Serra. Posterior-mente, esta nombró al Dr. César Rey Hernández como Secretario del Departamento de Educación.

 Apéndice del Recurso de apelación, pág. 60.

 En la demanda, la parte peticionaria mencionó que se concedieron “aumentos políticamente discriminatorios” a los supervisores no docentes siguientes: (1) Sr. Pablo Villegas (dos pasos por mérito en 2003 y otros dos en 2004); (2) Sra. Nomayra Sánchez Tirado (dos pasos por mérito en 2003 y otros dos en 2004), y (3) Sra. Carmen Pizarro Millán (una reclasificación con el máximo de tres pasos por mérito en 2003 y otros dos en 2004). Véase Apéndice del Recurso de apelación, págs. 60-61.

 Véase Apéndice del Recurso de apelación, pág. 62.

 Apéndice del Recurso de apelación, pág. 82.

 Íd., pág. 83.

 Según consta en una declaración jurada incluida con su contestación a la demanda, la Dra. Lizzette Pillich Otero indicó que el 10 de agosto de 2005 se enteró de que era parte de la demanda y que fue emplazada mediante edicto. Expresó, además, que estuvo ausente del Departamento de Educación durante diez meses, *1043 pero comoquiera esa agencia conocía su dirección y nunca fue notificada del emplazamiento. Declaró que estaba gestionando los beneficios de la Ley Núm. 9 (Ley de Reclamaciones y Demandas contra el Estado, según enmendada, 32 LPRA see. 3085). Véase Apéndice del Recurso de apelación, págs. 95-96.

 Apéndice del Recurso de apelación, pág. 88.

 Íd., pág. 125.

 Íd.

 Íd., pág. 127.

 Véase Apéndice del Recurso de apelación, pág. 131.

 Íd.

 La Procuradora General argumentó que el foro primario había incidido al no desestimar la demanda, cuando según las disposiciones de la Ley Núm. 184-2004 (Ley Núm. 184) conocida como la Ley para la Administración de los Recursos Huma-nos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 LPRA see. 1461 et seq., era CASARH (ahora CASP) la que poseía jurisdicción primaria exclu-siva para atender las reclamaciones relativas a los ascensos y aumentos salariales a los que la parte peticionaria alegaba tenía derecho.

 En síntesis, alegó que no procedía la desestimación porque el pleito era por discrimen político y el tribunal de instancia era el foro con jurisdicción para atenderlo.

 Véase Apéndice del Recurso de apelación, pág. 23.

 Íd.

 Véase Apéndice del Recurso de apelación, pág. 32.

 Íd., pág. 208.

 Íd., pág. 213.

 Véase Apéndice del Recurso de apelación, pág. 213.

 Íd., pág. 221.

 Íd., pág. 34.

 Apéndice del Recurso de apelación, pág. 35.

 Tribunal Supremo de Puerto Rico, Informe de Reglas de Procedimiento Civil, Secretariado de la Conferencia Judicial y Notarial, marzo 2008, pág. 134. http:// www.ramajudicial.pr/sistema/supremo/ informe-reglas-procedimiento-civil.pdf

 R. Hernández Colón, Derecho procesal civil, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.

 Véase Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 936 (2011).

 D.A.Co. v. Fcia. San Martín, 175 DPR 198, 203 (2009). Véanse, además: DACo v. AFSCME, 185 DPR 1, 12 (2012); Amieiro González v. Pinnacle Real Estate, 173 DPR 363, 371 (2008); Caribe Comms., Inc. v. P.R.T.Co., 157 DPR 203, 211 (2002).

 D.A.Co. v. Fcia. San Martín, supra, págs. 203-204.

 González y otros v. Adm. de Corrección, 175 DPR 598, 607-608 esc. 5 (2009).

 3 LPRA sec. 1462.

 Mediante el Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, conocido como el Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3 LPRA Ap. XIII, se derogó el Art. 13 de la Ley Núm. 184, supra, que establecía la CASARH.

 Véase DACo v. AFSCME, supra, pág. 12 esc. 12.

 Arroyo v. Policía de P.R., 143 DPR 265, 279 (1997).

 Leyva et al. v. Aristud et al., 132 DPR 489, 500 (1993).

 Albright v. Oliver, 510 US 266, 271 (1994); Graham, v. Connor, 490 US 386, 393-394 (1989); Baker v. McCollan, 443 US 137, 144 esc. 3 (1979).

 Acevedo v. Srio. Servicios Sociales, 112 DPR 256, 259 (1982). Véase, además, SLG Semidey Vázquez v. ASIFAL, 177 DPR 657, 679 (2009).

 Acevedo v. Srio. Servicios Sociales, supra, pág. 260.

 Leyva et al. v. Aristud et al., supra, pág. 500 esc. 5.

 Íd., pág. 501.

 SLG Semidey Vázquez v. ASIFAL, supra, pág. 692.

 Aponte Burgos v. Aponte Silva, supra, pág. 125.

 Rutan v. Republican Party of Illinois, 497 US 62, 75 (1990).

 Íd., pág. 76.

 Véanse, además: Aponte Burgos v. Aponte Silva, supra, Ramos v. Srio. de Comercio, 112 DPR 514 (1982); Báez Cancel v. Alcalde Mun. de Guaynabo, 100 DPR 982 (1972).

 McCrillis v. Aut. Navieras de P.R., 123 DPR 113, 140 (1989).

 Guzmán y otros v. ELA, 156 DPR 693, 711 (2002); Delgado Rodríguez v. Nazario de Ferrer, 121 DPR 347, 353 (1988).

 Vélez Ramírez v. Romero Barceló, 112 DPR 716, 722 (1982).

 Íd.

 Procuradora Paciente v. MCS, 163 DPR 21, 35 (2004); Rivera v. ELA, 121 DPR 582, 593 (1988).

 D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Colombia, Ed. Forum, 2013, pág. 613.

 Íd.

 Es importante mencionar que en Booth v. Churner, 532 US 731 (2001), el Tribunal Supremo federal estableció que en el caso de los prisioneros que presenten demandas por violación de derechos civiles estos sí deberán agotar los remedios administrativos conforme lo dispone 42 USC sec. 1997e(a), según enmendada por la Prison Litigation Reform Act of 1995. Esa sección expone lo siguiente:

“Sec. 1997e. Suits by prisoners

“(a) Applicability of administrative remedies
“No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted”.

 Patsy v. Board of Regents of the State of Fla., 457 US 496, 500-501 (1982).

 Fernández Quiñones, op. cit., pág. 630.

 Como sabemos, la Regla 16(E) del Reglamento del Tribunal de Apelaciones, 4 LPRAAp. XXII-B, dispone que “[l]a omisión de incluir documentos del apéndice no será causa automática de desestimación del recurso”. En varias ocasiones hemos expresado que la desestimación como sanción debe ser el último recurso y “cuando el tribunal utiliza dicho mecanismo procesal en casos de incumplimiento con su Regla-mento, debe cerciorarse primero que el incumplimiento haya provocado un impedi-mento real y meritorio para que el tribunal pueda atender el caso en los méritos”. Román et als. v. Román et ais., 158 DPR 163, 167 (2002).

 En ese caso el demandante presentó una reclamación por discrimen político al ser despedido de su puesto de ingeniero en el Departamento de Transportación y Obras Públicas de Puerto Rico. Aunque la controversia se relacionaba con el asunto de selección y remoción de un empleado público, concluimos que la controversia principal era el alegado discrimen político, por lo que correspondía a los tribunales atender la reclamación.